NATHAN WERNER, PLAINTIFF-RESPONDENT, v. KENT PARKING GARAGE, INC., A CORPORATION, DEFEND-ANT-APPELLANT.

Submitted May 1, 1945—Decided June 11, 1945.

Before Justices CASE, BODINE and PERSKIE.

For the plaintiff-respondent, *Fast & Fast* (*Herman L. Fast*).

For the defendant-appellant, *Theodore McCurdy Marsh* and *Waugh, Torppey & Consodine*.

The opinion of the court was delivered by

CASE, J. Plaintiff sued to recover damages caused by the alleged failure of the defendant to provide heat, in accordance with its contract, in a building owned by another and partly tenanted by plaintiff. Judgment went for the plaintiff, and defendant appeals. Two points are presented: First, that plaintiff had no right of action for the reason that the contract was not made for his benefit; second, that the alleged omission was not a violation of the contract.

Defendant is the owner of a building, known as the Kent Garage, fronting on Washington Street, Newark. The building is partly on lands owned by the defendant and partly on leased lands owned by one Bierman. Adjoining is a building owned by Bierman and occupied by tenants; and plaintiff as

tenant occupies the ground floor of the last mentioned building for tavern purposes. The central heating plant was in the defendant's building. On December 28th, 1940, Bierman and the defendant entered into an agreement, sufficiently supported by consideration, which contained, among other provisions, the following recitals and undertakings (italics inserted) : "Whereas, Kent has permitted Bierman to use the halls and stairways on the premises of Kent as a means of access to the second floor of the property of Bierman and has supplied heat and access to water and sewer to Bierman *and his tenants;* and Whereas, both Bierman and Kent desire to enter into a new arrangement *for the continuance of the foregoing arrangement;* Now, Therefore, * * * Kent hereby agrees during the term of this license, (a) to permit Bierman, his tenant, licensees and invitees, free access to and from the second floor of the building of Bierman in and through the entrance hall and stairway located on the premises of Kent; and (b) to supply during the months from October 1st to May 31st, inclusive, of each year covered by this agreement reasonable and necessary heat for the first and second floors of the aforesaid abutting premises owned by Bierman * * *." Kent furnished heat to the Bierman building until six o'clock P. M. on week days and until noon on Saturdays, but on Sundays, Saturday afternoons and after six o'clock in the evening furnished no heat beyond that necessary to prevent the freezing of water pipes. Plaintiff operated his place of business until two or three o'clock in the morning and was put to expense, for which he sues, in the supplying of heat necessary for the comfort of his guests. The lease agreement between plaintiff and Bierman contained these provisions:

"The parties hereto understand that heat for the premises hereby leased is obtained from the heating plant maintained by, and entirely under the control of, the owner of premises adjoining the premises hereby leased, and that the 'Landlord' herein named, has an agreement with the owner of said adjoining premises for heat to be supplied from the aforesaid heating plant to and for the premises hereby leased. * * * The parties hereto therefore hereby agree that the Landlord shall not be liable to the Tenant in the event that the aforesaid heat,

water and sewage facilities, or any of them, are interrupted or terminated through no default of the Landlord who has a working agreement with said adjoining owner for the continuance of said facilities. * * *

"The aforesaid written license is hereby expressly made a part of this lease, and this lease is made subject thereto and to all the terms and conditions therein set forth, said license agreement being recorded in the Essex County Register's Office in Book C 98 of Deeds for said County on pages 346, &c."

We are of the opinion that plaintiff's right of action must depend upon the existence of his alleged status as a person for whose benefit the heating contract was made; and we are of the further opinion that such status has been established. The problem is not simple in solution; but we construe defendant's heating contract as carrying an obligation, not merely to the owner, but also to the tenants of the adjoining structure. The contract recites the function theretofore performed by Kent as the supplying of heat to the tenants, and it recites that the purpose of the new agreement is to continue that arrangement. True, plaintiff's tenancy began after the date of the heating agreement; but the agreement was made in anticipation of future occupancy of the premises by a tenant and undertook to provide heat for that tenant. It was within defendant's rights to obligate itself to serve a future tenant, and we think that it did so by the terms of its agreement. The right of a third party to sue upon a contract made for his benefit is established by our statute, *R. S.* 2:26–3.6, and by our cases, *Holt* v. *United Security Life Insurance Co.*, 76 *N. J. L.* 585 (at *pp.* 589, 590); *Whitehead* v. *Burgess*, 61 *Id.* 75.

Plaintiff's position is analogous to that of a creditor beneficiary (*Cf. Williston on Contracts (Rev. Ed.)* §§ 361, *et seq. Brooklawn* v. *Brooklawn Housing Corp.*, 124 *N. J. L.* 73 (at *p.* 76). The defendant contracted to perform a duty which normally devolves upon the owner of a multiple-tenant building and which, in this particular instance, would otherwise have rested upon the owner, namely, to supply heat. In the lease agreement subsequently made the owner specifically

stated that there was such an assumption of duty by the defendant, and the owner disavowed any liability for a default by the defendant in the requirements of the heating contract. The lease did not and could not enlarge the defendant's duties, but it clearly reflected the owner's conception that the tenant was to look directly to the defendant for heat—a view that we think was consistent with the legal effect of the heating agreement. If the contention by appellant were correct, he, although the owner and operator of the central heating plant, could shut off the heat entirely and at all times without being answerable to a tenant whom, under our construction, he had contracted to serve.

Appellant's remaining contention is that it was obligated to supply heat only to the extent that the same was "reasonable and necessary" and that the supplying of heat on Sundays or on Saturday afternoons or after six o'clock in the evening of other days of the week was neither necessary nor reasonable. The building was commercial in its structure and use. Whether or not the heat actually supplied met the requirements of reason and necessity was a fact question which was resolved, with supporting testimony, against the defendant. That use was lawful and there was no covenant in the heating agreement as to the character of the tenancies then existing or thereafter to be instituted.

Finding, as we do, that the contract in question was made for the benefit of the tenant—which the plaintiff is—of the described premises, and that the sufficiency of the heat was a fact question decided, with sound support in the proofs, against the defendant, we conclude that the judgment below should be affirmed.